THE CUMBERLAND GLASS MANUFACTURING COMPANY AND JOHN F. PERRY v. THE STATE.

1. If a workman agree with his employer to take pay for his work, in part, in merchandise, the merchandise so furnished does not constitute a ground of set-off; it is a payment and goes in diminution of the claim for work.
2. Such a bargain is in violation of the first section of the act to secure to workmen the payment of wages in lawful money (*Rev. Sup.*, *p.* 771), and has no relation to the exceptive clause in the fourth section relative to set-offs.
3. *Quære.* Is this act constitutional?

On error to the Cumberland Quarter Sessions.

Argued at February Term, 1895, before BEASLEY, CHIEF JUSTICE, and Justices REED and GUMMERE.

For the plaintiffs in error, *William E. Potter.*

For the defendant, *William A. Logue.*

PER CURIAM.

The defendants were convicted before the Cumberland Quarter Sessions upon an indictment charging them with being engaged in the manufacture of glass, and with unlawfully paying to one John M. Quigg, a workman in the employ of the corporate defendant, the sum of $81.71 in store goods and merchandise as and for the wages earned by him while in the employ of said corporation.

At the trial it was shown that the workman above named, at the time of his engagement, entered into the following

agreement, to wit: "Bridgeton, N. J., July 28th, 1890. In consideration of the Cumberland Glass Manufacturing Company furnishing me with groceries, merchandise and money, I hereby agree to work for them at glassblowing for the blast of 1890 and 1891; and should I fail to do so, I hereby waive any plea in defence of my obtaining goods and money under false pretences."

The work in question was done and the goods furnished under this contract.

The act alleged to have been violated was the statute entitled "An act to secure to workmen the payment of wages in lawful money," passed in 1880. *Gen. Stat., p.* 2343.

The first section of this law makes it unlawful "for any glass manufacturer, ironmaster, foundryman, collier, factoryman, employer, cranberry-grower, or his agent or company, their agents or clerks, to pay the wages of workmen or employes by them employed in either store goods, merchandise, printed, written, verbal orders or due-bills of any kind."

By the fourth section it is provided as follows, viz.: "That any glass manufacturer, ironmaster, foundryman, collier, factoryman, employer or company offending against the provisions of this act, the same shall be a misdemeanor, and punishable by a fine of not less than $10 or more than $100 for each and every offence, or imprisonment not to exceed the term of thirty days, at the discretion of the court; but nothing in this act shall apply to or affect any private individual giving orders as aforesaid on a store in the business or profits whereof he has no interest, directly or indirectly, or to the offset of any debt due from such workman to any glass manufacturer, ironmaster, foundryman, collier, factoryman, employer or company, where the said debt is voluntarily contracted by the employe, or to the payment of any debt due from such workman to any glass manufacturer, ironmaster, foundryman, collier, factoryman, employer or company."

By an act approved March 13th, 1888 (*Pamph L., p.* 74), the fourth section of the original act was amended so as to eliminate from it the proviso or restrictive clause just recited, and

it was the validity of this supplement that forms the topic of the discussion in the briefs of counsel. This argument proceeded on the assumption that the primary act conferred upon the defendants the right to set off merchandise that it had furnished to the employe, and that if this provision was in force the defendants were guiltless.

But the court is of the opinion that this discussion is not relevant to the case before us. As has appeared, the exceptive clause in section 4 of the original act relates to set-offs or debts due from the employe to the employer. In the present instance, the merchandise furnished did not constitute offsets or debts; by force of the contract between the parties they were payments pure and simple. The legal doctrine on this subject is entiely clear. A set-off is a counter-demand, growing out of an independent transaction, for which an action might be maintained by the defendant against the plaintiff. For a full collection of the decisions on the subject, see 22 *Am. & Eng. Encyl. L.* 211, *tit. "Set-off."*

As, therefore, the defence in this case could not be successfully rested on the last clause of section 4 of the original act, it becomes of no importance, for present purposes, whether that clause has been repealed or not. It would be a pure waste of time for the court to supererogate on that subject.

Before closing this branch of the case, it is proper to say that we have found no ground on which the conviction of the defendant Perry can be rested. This man's only connection with the transaction is that he was the bookkeeper and a stockholder of the glass company. On account of such relationships, he is not responsible for the violation of the act in question by the company. It is section 4 that pronounces the punishment, and by its express terms it is the act of the employer himself, and not the act of his agent, that is made the punishable misdemeanor.

With respect to this party, the judgment must be reversed.

These results dispose of the case so far as it is exhibited in the briefs of counsel, but there is another problem that must be resolved before the court can finally decide upon the alleged

criminality of the defendant. That question is, whether the legislature, in enacting the law of 1888, did not exceed its power. It is obvious that the general effect of this statute is to prevent a workman, who is entirely *sui juris,* from stipulating as to the character of the compensation to be given to him for his work.

The inquiry thus arising is one of great importance, touching, as it does, one of the essential rights of the citizen and the extent of legislative authority, and, therefore, should not be settled except upon the fullest consideration.

The result is that the case will be retained, so that counsel can send in briefs on the point thus reserved.