44 N.J. Super. 42 (1957)
129 A.2d 588
DEPARTMENT OF LABOR AND INDUSTRY, STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
MAX ROSEN, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 4, 1954.
Decided February 25, 1957.
*43 Before Judges GOLDMANN, FREUND and CONFORD.
*44 Mr. John F. Crane argued the cause for the plaintiff-appellant (Mr. Grover C. Richman, Jr., Attorney-General of New Jersey, attorney).
No appearance for nor brief filed by the defendant-respondent.
The opinion of the court was delivered by FREUND, J.A.D.
The State, through the Department of Labor and Industry, filed in the Municipal Court of the City of Paterson 19 complaints against the defendant, Max Rosen, president of Victory Fabrics, Inc., charging violation of the provisions of N.J.S.A. 34:11-4 for failure to pay his employees their full wages. The parties stipulated that only one of the cases be tried and that the decision be dispositive of all. The trial court found that the defendant had violated the statute, imposed a penalty of $50 for each of the 19 violations and entered judgment for the plaintiff in the amount of $950. The defendant appealed to the Passaic County Court which, after a trial de novo, reversed, 40 N.J. Super. 363 (Cty. Ct. 1956), entering a judgment of no cause of action in favor of the defendant. The plaintiff appeals.
There is no dispute as to the facts, only a legal issue is before us. N.J.S.A. 34:11-4 requires that:
"Every person, firm, association or partnership * * * and every corporation * * * shall pay at least every two weeks, in lawful money of the United States, to each and every employee engaged in his, their or its business * * * the full amount of wages earned and unpaid in lawful money to such employee, up to within twelve days of such payment."
The penalty for violation of this section is prescribed in N.J.S.A. 34:11-6 which provides that:
"Every person, firm, association, partnership or corporation mentioned" in the above section "and every officer or agent thereof who shall violate any of the provisions of said section 34:11-4 shall, for the first offense, be liable to a penalty of fifty dollars ($50.00), *45 and for the second and each subsequent offense to a penalty of one hundred dollars ($100.00), to be recovered by and in the name of the Department of Labor of this State. * * *"
At the trial de novo, the defendant admitted that his employees had not been paid their full wages. The corporation conducted a commission business, weaving at a specified rate per yard materials owned and supplied by its customers. Because of financial difficulties the corporation defaulted in the payment of rent, the landlord distrained, and the owners removed their materials. The defendant testified that he divided "all the money that I had in the bank at the time equally amongst my help. It amounted to about twenty per cent. * * * I was unable to pay them in full, because I hadn't any money * * * I had no means of paying." The County Court reversed the judgment below on the ground that the proceeding was criminal in nature, requiring proof of guilt beyond a reasonable doubt of intention to violate the statute or a willful refusal to pay the wages due, and that the State failed to so prove.
Regardless of in how sympathetic a light this court may view the defendant's situation, our duty is to construe the statute as enacted. We cannot write into the statute conditions or qualifications; that is the function of the Legislature.
The issues are these: (1) are the pertinent statutes criminal in nature, and (2) is proof of willful intention to violate required?
Historically, N.J.S.A. 34:11-4 is derived from chapter 179 of the Laws of 1896 and chapter 38 of the Laws of 1899, the latter entitled "An Act to provide for the payment of wages in lawful money of the United States every two weeks." The motivating factor for the enactment of the legislation was the elimination of the practice prevalent among factory owners, particularly by owners of glass factories in southern New Jersey, of paying wages in the form of order books or scrip, redeemable only at company-owned stores. Cumberland Glass Mfg. Co. v. State, 58 N.J.L. 224 (Sup. Ct. 1895); see Daily True American, Trenton, N.J., March *46 14-17, 1896; February 28, March 10 and 17, 1899. The statutes, an exercise of the police power of the State, have decided economic benefits to the employee. The assurance of payment in cash at regular intervals of wages upon which an employee is dependent for the support of himself and his family is obviously an economic and social necessity. Indeed, such a view has biblical support: "The wages of him that is hired shall not abide with thee all night until the morning," Leviticus, 19, 13; "At his day thou shalt give him his hire, neither shall the sun go down upon it; * * *" Deuteronomy, 24, 15.
The unsavory practice proscribed by the Legislature had also been prevalent in other jurisdictions where employers in so-called company towns paid employees in scrip or specially marked coinlike pieces of metal redeemable only at company commissaries for food and clothing, or applicable to rent for company houses. An excellent article, "The Constitutionality of Bimonthly Pay Day Laws," 16 Tenn. L. Rev. 940 (1941), by Cyril J. Smith states:
"Thirty-six states have laws requiring periodic pay days. Violation subjects the employer to criminal punishment in twenty of them, to civil penalties in nine, to both in six and in one no penalty is imposed."
New Jersey is one of the nine states which impose a civil penalty only.
It has been held by the Supreme Court of the United States that statutes like the one under consideration requiring employers to pay wages in cash at stated intervals and imposing penalty for failure so to do, do not violate due process. Erie R.R. v. Williams, 233 U.S. 685, 34 S.Ct. 761, 58 L.Ed. 1155 (1914), nor do they invalidly limit freedom of contract, Knoxville Iron Co. v. Harbison, 183 U.S. 13, 22 S.Ct. 1, 46 L.Ed. 55 (1901); Keokee Consol. Coke Co. v. Taylor, 234 U.S. 224, 34 S.Ct. 856, 58 L.Ed. 1288 (1914).
The court below declared that while an action for the recovery of a penalty is a civil action, "it is, however, criminal in nature." This ruling is contrary to long-settled *47 principles of law, restated with supporting decisions in the exhaustive opinion of Chief Justice Vanderbilt in the recent case of Sawran v. Lennon, 19 N.J. 606, 612-616 (1955), wherein he said:
"Suits for penalties * * * originating in the same way by statutes * * * are neither criminal or quasi-criminal in nature but civil. Such offenses are punishable, as the name implies, by penalties * * * (but not, as in cases of disorderly conduct, by fines) and in appropriate cases by corporal imprisonment. * * * Penalty actions, moreover, unlike fines in criminal cases and in proceedings against disorderly persons, may involve sanctions which may enure to the benefit of private individuals, such as qui tam action * * * The clear purpose of both quasi-criminal proceedings against disorderly persons and civil actions for penalties is to provide a summary action for the disposition of minor offenses free from indictment and trial by jury in cases not deemed sufficiently important to call for indictment and trial by jury. * * *
By great weight of authority actions for the collection or enforcement of a penalty only have been held to be civil proceedings * * * The distinction is that they are enforced, not by criminal imprisonment, but through a civil action * * * or through * * * hybrid summary civil proceeding which starts with a complaint * * * and ends with a judgment of conviction. * * * Both are nevertheless civil in nature and involve execution against the goods and chattels of the defendant (and also his lands if the judgment is in the County Court) * * * or against the body of the defendant on a civil capias if the court specially orders, N.J.S. 2A:58-4, R.R. 7:13-14. This line of authority showing unquestionably the civil nature of a penalty provision clearly excludes any possible implication of a forfeiture resulting from a criminal act."
The distinction between a penalty and a fine is thus stated in 23 Am. Jur., Forfeitures and Penalties, § 28, p. 624:
"* * * a penalty, like a fine, is a pecuniary punishment inflicted by the law for its violation. Nevertheless, there is a marked distinction between a fine and a penalty which is recognized by the courts. A penalty is that which is demanded for the violation of a statute, which violation may or may not be a crime. A fine is a punishment for the commission of a crime. Crimes, except the gravest, can be punished only by fine or imprisonment. A penalty is not in any legal sense a fine. Indeed, nearly all statutes giving a penalty for committing a prohibited act preserve the distinction by providing that the penalty may be recovered in a civil action, while a crime, if it be so declared, must be punished by the infliction of a fine or imprisonment, after conviction in a criminal action."
*48 N.J.S.A. 34:11-6 provides only for assessment of a monetary penalty, and N.J.S.A. 34:11-7 directs that the enforcement shall be in accordance with N.J.S. 2A:58-1 et seq., the Penalty Enforcement Statute, which governs enforcement of penalties under all statutes. Clapp, 8 Rutgers L. Rev. 20-21 (1953). N.J.S. 2A:58-4 provides that "If a money judgment is rendered against a defendant, execution may issue" first, against his goods, and, second, against his lands, and "(3) against the body of such defendant if the court * * * shall, by special order, so direct. * * *" Sawran v. Lennon, supra, held that this is a civil capias "showing unquestionably the civil nature of a penalty provision. * * *"
The question of enforcement or the method thereof is not now before us except as it is involved in the discussion on the nature of the proceeding. We have before us for review a judgment reversing a money judgment representing a penalty for statutory violation. Non-payment of such a money judgment may, after resort to personalty and to realty of the defendant, result in an execution against the body of the defaulting defendant. However, such an execution may only issue if the court so directs by special order. The fact that a penalty statute provides for enforcement by body execution in the event of failure to pay the penalty is not conclusive of the nature of the proceeding as being either criminal or civil. Enforcement provisions for non-payment of penalties are frequently found in civil penalty statutes. Cf. State Board of Medical Examiners v. Kornreich, 136 N.J.L. 367 (Sup. Ct. 1948); Lowrie v. State Board of Dentistry, 90 N.J.L. 54 (Sup. Ct. 1917).
The statute, N.J.S.A. 34:11-6, provides that all penalties recovered for any violations shall be paid to the Department of Labor for the use of the State.
"If the state may recover a penalty in a civil proceeding, the nature of the action should not be determined by whether the ultimate recipient of the penalty is the state or an individual. United States v. Illinois Cent. R. Co., 170 Fed. 542, 544 (6 Cir. 1909). *49 * * * An action for a penalty is little different from any other action for damages  the defendant stands to lose only a pecuniary sum."
"Statutory Penalties, A Legal Hybrid," 51 Harv. L. Rev. 1092 (1938).
We are of the conclusion that the action is not criminal in nature.
We shall next consider whether imposition of the penalty is dependent on proof of intention to violate the statute, and whether extenuating circumstances may operate to deny recovery. The statute being in derogation of the common law must be strictly construed. "Strict or Liberal Construction of Penal Statutes," 48 Harv. L. Rev. 748 (1935); "The Substantive Law of Crimes  Judicial Interpretation of Penal Statutes," 50 Harv. L. Rev. 637 (1937); 2 and 3 Sutherland, Statutory Construction (3d ed., 1943), § 3303, p. 235; § 5605, p. 54. N.J.S.A. 34:11-4 is clear and explicit  it provides that every employer shall pay every employee the full amount of his earned wages in lawful money at least every two weeks. N.J.S.A. 34:11-6 is equally unambiguous and definite, specifying that "every person * * * officer or agent * * * who shall violate any of the provisions of said section 34:11-4 shall, for the first offense, be liable to a penalty of fifty dollars ($50.00) * * *." It does not stipulate that willfulness or intention to violate must be proved. It does not say that the penalty need not be imposed if the offender establishes extenuating circumstances; as a matter of fact, it gives the court no discretion as to whether or not to impose the penalty. The statutes are so plain and unambiguous that upon proof of violation, the court is not at liberty to infer or read into the statute that the Legislature intended that the penalty need not be imposed if the state fails to prove intention to violate or if the offender presented facts or circumstances denying willfulness or pleading financial inability. If the Legislature intended discretion in the enforcement of the statute, it would have so provided. O'Keefe v. Board of *50 Trustees, etc., 131 N.J.L. 502 (Sup. Ct. 1944), affirmed 132 N.J.L. 416 (E. & A. 1945); Rosenthal v. State Employees, etc., 30 N.J. Super. 136, 140 (App. Div. 1954).
The Legislature may make the commission or omission of an act penal regardless of intent, "and in such case only the doing of the proscribed act need be shown." State v. Labato, 7 N.J. 137 (1951), citing Halsted v. State, 41 N.J.L. 552 (E. & A. 1879), and State v. Kuehnle, 85 N.J.L. 220 (E. & A. 1913). "The absence of such an intent to violate the law is not a defense, since the intent is not a necessary feature of the case, and is immaterial." 23 Am. Jur., Forfeitures and Penalties, § 77, p. 661; People v. D.H. Ahrend Co., City Mag., 118 N.Y.S.2d 426 (not officially reported), (N.Y.C. Mag. Ct. 1953), affirmed 283 App. Div. 1054, 131 N.Y.S.2d 507 (App. Div. 1954), affirmed 308 N.Y. 112, 123 N.E.2d 799 (Ct. App. 1954). So here. In New York, violation of the statute of corresponding import is a misdemeanor, N.Y. Labor Law, McKinney's Consol. Laws, c. 31, § 195-6, and corporate officers who knowingly permit violations are equally guilty, N.Y. Penal Law, McKinney's Consol. Laws, c. 40, § 1272. In People v. Primrose Wet Wash Laundry Co., 256 App. Div. 1088, 11 N.Y.S.2d 302 (App. Div. 1939), the court said:
"There is no basis for a holding that the Legislature intended to make any exceptions by virtue of equitable circumstances in providing for the payment of wages in cash and within the stipulated period. If inability to pay were to be considered as a defense, the statutes would be rendered nugatory."
There are variations in the statutes of the 36 states which have wage payment laws. Some, like New York and New Jersey, impose penalties without proof of intent to violate; Tennessee makes a willful violation an offense; Georgia prohibits willful failure and makes insolvency a defense; Washington covers only employers who having the ability to pay, willfully refuse to pay. Thus, in some states, intent is an essential element, but not in New Jersey. 16 Tenn. L. Rev. 940 (1941), supra; see Annotation, 48 A.L.R.2d *51 1385; 23 Am. Jur., Forfeitures and Penalties, § 77, p. 661. Here, the violation of the statute is admitted and there is no discretion permitted in imposing the penalty.
We are not concerned with the amount of the penalty to be imposed, particularly since the point is not raised.
Reversed, without costs.