CRABTREE, J. T. C.
Plaintiffs seek review of defendant’s determination that gain realized by plaintiffs from the 1975 sale of their improved, income-producing real property was taxable under the Tax on Capital Gains and Other Unearned Income Act, N.J.S.A. *478 54:8B-1 et seq., since repealed. The deficiency arising from such determination is $9,966.87, plus penalty and interest. The sole issue is whether gain from the sale of real property used in plaintiffs’ trade or business and subject to the allowance for depreciation (commonly referred to as “section 1231 property”) is subject to tax under the taxing statute in question. Defendant admits that the property constituting the subject matter of the sale sought to be taxed is § 1231 property.[1]
The facts, all of which have been stipulated pursuant to R. 8:8-l(b), can be stated briefly.
Plaintiffs acquired, on or about May 1, 1967, improved real property located in Plainfield, New Jersey, for a total consideration of $247,505. The property was subject to an annual allowance for depreciation and was held by plaintiffs for rent in their real estate business. In 1973 plaintiffs borrowed $300,000 from Washington Savings Bank, Hoboken, New Jersey, giving that institution a mortgage on the property. Plaintiffs sold the property on December 26, 1975 for a total consideration of $440,000, consisting of $13,651 cash, the buyer’s assumption of the aforementioned mortgage, a $16,000 nonnegotiable, noninterest-bearing note and a purchase money bond and second mortgage for $118,000, payable over 12 years with interest at 5% annually. At the time of sale the outstanding balance of the first mortgage assumed by the buyer exceeded plaintiffs’ adjusted basis in the property by $117,644.
Plaintiffs reported the gain from the sale on their 1975 federal income tax return as gain from the sale of § 1231 property. They also elected, at the same time, to report the gain on the installment basis pursuant to § 453 of the Internal Revenue Code.
*479 The act imposed a tax, at graduated rates, upon unearned income earned, received or constructively accrued or credited to the taxpayer during the taxable year. N.J.S.A. 54:8B-3. “Unearned income” was defined to include dividends, interest, royalties and gains from the sale or exchange of capital assets. N.J.S.A. 54:8B-2. The statute specifically excluded from the definition of capital assets “property used in [the taxpayer’s] trade or business of a character which is subject to the allowance for depreciation.” Ibid. “Gains from the sale or exchange of capital assets” was defined to mean “net gains as defined by regulation of the director which shall be consistent with definitions prescribed for Federal income tax purposes.” Ibid.
Pursuant to his apparent statutory authority to define net gains, defendant adopted a regulation dealing with gains from the sale of § 1231 property. That regulation provides, pertinently:
Any net “Section 1231” gain resulting from sales ... of real or depreciable property used in a trade or business ... which is reported as capital gains for Federal income tax purposes shall also be treated and reported as capital gains for New Jersey unearned income tax purposes .... [N.J.A.C. 18:30-6.10]
Plaintiffs argue that the statute is unambiguous and thus not open to interpretation or construction; that the courts do not resort to extrinsic evidence tending to show a legislative intent different from the intent appearing from the plain language of the statute, and that defendant’s regulation is an invalid exercise of a legislative function.
Defendant contends, on the other hand, that the statute embodies conflicting provisions, which defendant was authorized to resolve by “legislative” regulation; that the regulation adopted pursuant thereto is dispositive, and that, in any event, resort may be had to extrinsic evidence in aid of ascertaining the real legislative intent.
Plaintiffs are correct in their analysis of the statute.
It is well settled that a clear and unambiguous statute is not open to interpretation or construction. In re Jamesburg High School Closing, 83 N.J. 540, 416 A.2d 896 (1980); Watt v. Franklin, 21 N.J. 274, 121 A.2d 499 (1956); Duke Power Co. v. *480 Patten, 20 N.J. 42, 118 A.2d 529 (1955). Courts have refused to resort to extrinsic evidence in aid of construction when the statute is unambiguous, and in such a case the statute must speak for itself and be construed according to its terms. Sheeran v. Nationwide Mut. Ins. Co., Inc., 80 N.J. 548, 404 A.2d 625 (1979); Hancock v. Employment Security Div. Bd. of Review, 46 N.J.Super. 418, 134 A.2d 775 (App.Div.1957); Lopez v. Santiago, 125 N.J.Super. 268, 310 A.2d 500 (App.Div.1973). When the Legislature clearly defines a term the courts are bound by that definition. Febbi v. Employment Security, Div. Bd. of Review, 35 N.J. 601, 174 A.2d 481 (1961); Eagle Truck Transport, Inc. v. Employment Security, Div. Bd. of Review, 29 N.J. 280, 148 A.2d 822 (1959).
Here, the Legislature, in enacting NJ.S.A. 54:8B-2, clearly and unambiguously excluded § 1231 property from taxation under the act. The Legislature, having defined capital assets in such a fashion as to exclude § 1231 property, went on to delegate to defendant the authority to define net gains. This delegation is entirely consistent with the earlier definition of capital assets. Defendant, for example, might have determined to ignore installment sale treatment of gains realized on post-enactment transactions, or he could have provided that the amount attributable to nonrecourse financing would not be includable in the measurement of gain, or that all depreciation in excess of straight line would be ignored. In fact, defendant has undertaken, within the limitations of the statutory delegation, to define gains, and in the course thereof he has (1) disallowed capital loss carry-overs from any prior year, (2) permitted the reporting of gain on the installment basis consistent with federal tax reporting and (3) adopted the federal “imputed interest” rules in measuring the quantum of gain reported on the installment basis. N.J.A.C. 18:30-6.1. All these definitions, those which could have been adopted as well as those actually promulgated, are consistent with the legislative declaration that particular categories of assets, such as depreciable trade or business property, shall not be treated as capital assets. This demonstrable consistency reflects well settled rules of statutory construe *481 tion, namely, that full force and effect is given, whenever possible, to every sentence, clause and word, Hoffman v. Hock, 8 N.J. 397, 86 A.2d 121 (1952); Jamouneau v. Tax Appeals Div., 2 N.J. 325, 66 A.2d 534 (1949), and that any interpretation which renders any part of a statute ineffective, superfluous, inoperative or meaningless, must be avoided. Peper v. Princeton Univ. Bd. of Trustees, 77 N.J. 55, 389 A.2d 465 (1978); Gavin v. Skyline Cabana Club, 54 N.J. 550, 258 A.2d 6 (1969). Defendant’s position that his regulation (N.J.A.C. 18:30-6.10) includes gains from the sale of § 1231 property among transactions taxable under the act is directly contrary to the legislative declaration placing such gains beyond the ambit of the statute.
For the reasons hereinabove stated, I conclude that N.J. S.A. 54:8B — 2 incorporates no inconsistent, ambiguous or conflicting provisions and, therefore, that defendant’s attempt to resolve the alleged conflict by “legislative” regulation is a nullity. The regulation in question, N.J.A.C. 18:30-6.10, constitutes an invalid exercise of legislative power, as it is contrary to the plain meaning of the statute. Service Armament Co. v. Hyland, 70 N.J. 550, 362 A.2d 13 (1976). See N.J. State Chamber of Commerce v. N.J. Election Law Enforcement Comm’n, 82 N.J. 57, 82, 411 A.2d 168 (1980).
Defendant also argues that legislative history impels the conclusion that the Legislature intended to tax gains from the sale of § 1231 property; that the act was adopted in great haste in the throes of a major fiscal crisis for the State and that exclusion of § 1231 gains would have totally frustrated the Legislature’s overriding purpose to secure as much revenue as possible as quickly as possible. Put another way, the language of the statute should be ignored in deference to the obvious legislative objective, the urgency of which must be viewed against the backdrop of the fiscal exigencies prevailing at the time of enactment. This argument is contrary to the rule that words and phrases used by the Legislature must be accorded their ordinary and generally accepted meaning in the absence of a specific contrary indication. N.J.S.A. 1:1-1; Safeway Trails, *482 Inc. v. Furman, 41 N.J. 467, 478, 197 A.2d 366 (1964); Service Armament Co. v. Hyland, supra 70 N.J. at 556, 362 A.2d 13.
Defendant urges that the plain meaning of the statutory language leads to an absurd result, /. e., the unexplained exclusion of § 1231 gains from the reach of the statute, and, thus, he argues, citing Watt v. Franklin, 21 N.J. 275, 121 A.2d 499 (1956), the court must inquire into the true purpose of the enactment. In aid of this inquiry he points to the Legislature’s stated reliance upon similar legislation in Connecticut. Conn.Gen.Stat. § 12-505 et seq. Defendant’s reference to the Connecticut enactment does not aid his position. On the contrary, examination of the definitions section of the Connecticut statute (§ 12-505) reveals the absence of a definition of capital asset. Such definition appears in N.J.S.A. 54:8B-2. Where, as here, the Legislature adopts a new law, using as a source a statute theretofore enacted in another jurisdiction, all changes in words and phrasing, including omissions and additions, are deemed deliberately made with the purpose of limiting, qualifying or enlarging the adopted rule. Airwork Service Div. v. Taxation Div. Director, 2 N.J. Tax 329, 346 (Tax Ct.1981); Sutton v. Duke, 277 N.C. 94, 176 S.E.2d 161 (1970).
Judgment will be entered for plaintiffs in accordance with this opinion.

The resolution of the stated issue makes it unnecessary to address plaintiffs’ challenge to the constitutionality of defendant’s attempt to tax pre-enactment appreciation, and plaintiffs contention that, by reason of “mortgaging out,” the gain was realized in an earlier year, prior to enactment of the taxing statute.